Mr. Daniel J. Bosanko St. Johns Assistant County Attorney Post Office Box 1533 St. Augustine, Florida 32085-1533
Dear Mr. Bosanko:
On behalf of the Board of County Commissioners of St. Johns County, you ask substantially the following questions:
1. Is an architectural review committee of a homeowners' association subject to the Government in the Sunshine Law and the Public Records Law where that committee, pursuant to county ordinance, must review and approve applications for county building permits?
2. If so, may the meetings of such architectural committee be noticed and open only to members of the homeowners' association?
In sum:
1. An architectural review committee of a home owners' association is subject to the Government in the Sunshine Law and the Public Records Law where that committee, pursuant to county ordinance, must review and approve applications for county building permits.
2. Meetings of such architectural committee to consider such applications must be noticed and open to the public at large and not merely to members of the homeowners' association.
Question One
The Florida Government in the Sunshine Law, section 286.011(1), Florida Statutes, provides:
"All meetings of any board or commission . . . of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting."
As a statute enacted in the public interest to protect the public from "closed door" politics, the Sunshine Law must be broadly construed to effect its remedial and protective purpose.[1] The courts of this state have repeatedly stated that it is the entire decision-making process to which the Sunshine Law applies and not merely to a formal assemblage of a public body at which voting to ratify an official decision is carried out. Thus, the statute extends to discussions and deliberations as well as to formal action taken by a public body.[2] As the court stated in TimesPublishing Company v. Williams,[3]
"[I]t is the entire decision-making process that the legislature intended to affect by the enactment of the statute before us. . . . Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action. It follows that each such step constitutes an "official act," an indispensable requisite to `formal action,' within the meaning of the act."
The Supreme Court of Florida, in Town of Palm Beach v.Gradison,[4] construed the scope of section 286.011, Florida Statutes, as extending to include the "inquiry and discussion stages" of meetings of public bodies. The court held that an advisory lay group of citizens served as an arm of the town council and was, therefore, a board or commission subject to section 286.011, Florida Statutes. The group served part-time as the alter ego of the town council to make tentative decisions guiding the zoning planners, and much of the administrative and legislative decisional zoning formulation authority ordinarily exercised by the governing body of a city had been delegated to this group. Similarly, in IDS Properties, Inc. v. Town of PalmBeach,[5] the court held that there was no exception to the Government in the Sunshine Law by undertaking to delegate the conduct of public business through the use of an alter ego:
"It is axiomatic that public officials cannot do indirectly what they are prevented from doing directly. Those to whom public officials delegate de facto authority to act on their behalf in the formulation, preparation and promulgation of plans on whichforeseeable action will be taken by such public officials stand in the shoes of such public officials insofar as the application of the Government in the Sunshine Law is concerned."[6]
As the Supreme Court of Florida stated in Wood v. Marston,[7]
"[n]o official act which is in and of itself decision-making can be `remote' from the decision-making process, regardless of how many decision-making steps go into the ultimate decision."
Although the Legislature has "no right to require meetings of civic organizations, unconnected with . . . government, to conform to the government in the sunshine law,"[8] I am unable to state that these architectural review committees are unconnected with county government. While the activities of a homeowners' association architectural review committee would not normally be subject to the Sunshine Law, the county has by ordinance elevated the decisions of such committee to a prerequisite step in obtaining a building permit. The ordinance, in effect, gives these committees the authority to review and approve building permit applications before they will be considered by the county building department. If the committee does not approve the application, a county permit generally will not be issued.
Section 5.03.02G. of the county code states:
"Any PUD/PRD/PSD that requires homeowner's association or committee review and/or approval of an application for a building permit prior to issuance of a County building permit shall include or be presumed to include the following requirements, limitations and appeal provisions in regard to that process:
* * *
2. The homeowner's association shall comply with all valid and applicable State laws and County ordinances that pertain to hearings, public and private notices and public records."
In considering the applicability of the Sunshine Law to private entities that provide services to public agencies, this office, for example, has stated that where a county has accepted the technical services of a nongovernmental advisory committee appointed by a private nonprofit corporation in the recodification and amendment of the county zoning laws, the meetings of such a committee were subject to the Sunshine Law.[9] While the Sunshine Law does not generally apply to private organizations, the committee appointed to study the zoning code was not, in this office's opinion, unconnected with government but rather had been impliedly delegated the authority to act on behalf of the county commission in the examination and revision of the zoning code.
Similarly, in Attorney General Opinion 85-55, this office concluded that the actions of the downtown redevelopment task force, in analyzing methods for improvement of the downtown business and residential areas and in placing recommendations before the city commission for its consideration, constituted a significant part of the decision-making process by the city commission toward the improvement of the downtown business district. Although the task force was not appointed by the city, it in effect stood in the place of the city commission when it analyzed information regarding the improvement of the downtown business district. Thus, this office concluded that the task force was subject to the Sunshine Law.
Florida's Public Records Law, Chapter 119, Florida Statutes, provides that records made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making the records confidential.[10] An "agency" is defined for purposes of the Public Records Law to include private corporations acting on behalf of any public agency.[11]
Recent decisions by the courts considering the applicability of the Public Records Law have focused on whether the private entity is merely providing services to the public agency or is standing in the shoes of the public agency. For example, the court inStanfield v. Salvation Army,[12] in holding a private corporation subject to Chapter 119, Florida Statutes, characterized a private corporation taking over the county's role as the provider of probation services not as the provision of services but rather the assumption of a governmental obligation: "Rather than providing services to the county, the Salvation Army provided services inplace of the county."[13]
Similarly, the Fifth District Court of Appeal in News-JournalCorporation v. Memorial Hospital-West Volusia, Inc.,[14] noted a distinction between a private entity's provision of materials or services to a public body to help the public body perform its public function and a private entity's performance of the public function in place of the public body. As the Supreme Court noted in approving the Fifth District's opinion, when the actual public function is transferred, public access follows.[15]
In the instant inquiry, the authorized function of the county to review and approve county building permits has been transferred and delegated to the architectural review committees of the homeowners' associations by county ordinance.
Accordingly, in light of the above, I am of the view that an architectural review committee of a homeowners' association is subject to the Government in the Sunshine Law and the Public Records Law where that committee, pursuant to county ordinance, must review and approve applications for county building permits.
Question Two
In light of this office's conclusion that meetings of architectural committees that must by county ordinance review and approve requests for county building permits are subject to the Sunshine Law, you ask whether the notice for, and attendance at, such meetings may be limited to members of the homeowners' association.
The Sunshine Law requires that meetings of boards or commissions covered by the law be "open to the public" and that reasonable notice of such meetings be given.[16] While generally the meetings of an architectural committee of a homeowners' association would not be required to be open to the public, in the instant inquiry these committees have been elevated by county ordinance to constitute an integral part of the decision-making process relating to the issuance of county building permits.
I find nothing in section 286.011, Florida Statutes, that would limit either the notice given or the attendance at such meetings to members of the homeowners' association only.[17] This office has stated that the term "public" means "the people as a whole" and that the phrase "open to the public" means open to all persons who choose to attend.[18]
I am, therefore, of the opinion that meetings of an architectural review committee of a homeowners' association that must review and approve applications for county building permits must be noticed and open to the public at large and not merely to members of the homeowners' association.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, Wood v. Marston, 442 So.2d 934, 938 (Fla. 1983); Canneyv. Board of Public Instruction of Alachua County, 278 So.2d 260
(Fla. 1973); Board of Public Instruction of Broward County v.Doran, 224 So.2d 693 (Fla. 1969).
[2] See, Board of Public Instruction of Broward County v. Doran,224 So.2d 693, 699 (Fla. 1969), in which the court recognized the right of the public to be present and heard during all phases of enactments by public boards and commissions; Krause v. Reno,366 So.2d 1244 (Fla. 3d DCA 1979).
[3] 222 So.2d 470, 473 (Fla. 2d DCA 1969).
[4] 296 So.2d 473 (Fla. 1974). And see, Wood v. Marston, supra, in which the Court focused on the nature of the act performed, not on the make-up of the committee or the proximity of the act to the final decision. Finding the acts to be decision-making, in spite of the review procedures prior to ratification of the decision made, the Court stated:
"Review is a second-hand retrospective reflection upon the decision-making process, not the first-hand observation to which the public is entitled. Where a body merely reviews decisions delegated to another entity, the potential for rubber-stamping always exists. To allow a review procedure to insulate the decision itself from public scrutiny invites circumvention of the Sunshine Law."
[5] 279 So.2d 353 (Fla. 4th 1973).
[6] Id. at 356.
[7] 442 So.2d 934, 941 (Fla. 1983).
[8] Town of Palm Beach v. Gradison, supra, at 476.
[9] Attorney General Opinion 83-95 (1983).
[10] See, s. 119.011(1), Fla. Stat., defining "Public records"; and Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So.2d 633 (Fla. 1980).
[11] Section 119.011(2), Fla. Stat.
[12] 695 So.2d 501 (Fla. 5th DCA 1997).
[13] Id. at 503. And see, Prison Health Services, Inc. v.Lakeland Ledger Publishing Company, 718 So.2d 204 (Fla. 2d DCA 1998) (PHS undertook to act on behalf of the Sheriff by providing medical services and, therefore, "all of its records that would normally be subject to the Public Records Act if in the possession of the public agency are likewise covered by that law, even though in the possession of PHS, a private corporation.")
[14] 695 So.2d 418 (Fla. 5th DCA 1997), approved, 1999 WL 20562 (Fla. 1998).
[15] 1999 WL 20563 (Fla. 1998).
[16] Section 286.011(1), Fla. Stat.
[17] Cf., Port Everglades Authority v. InternationalLongshoremen's Association, Local 1922-1, 652 So.2d 1169 (Fla. 4th DCA 1995), in which the court held that a meeting of a procurement committee in which the chairman asked each presenter "as a courtesy" to leave the meeting room while the committee considered competing presentations violated the Sunshine Law.
[18] See, Op. Att'y Gen. Fla. 79-01 (1979), stating that public employees are members of the public and, thus, entitled to attend meetings covered under the Sunshine Law. A board or commission covered by the Sunshine Law may not, therefore, preclude public employees from attending such meeting although the Sunshine Law does not prevent the reasonable application of ordinary personnel policies, for example, the requirement to use annual leave to attend meetings, provided that such policies do not frustrate or subvert the purposes of the Sunshine Law.